**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NECHAMA KAISER,

                Plaintiff,

           - v -

NYU GROSSMAN SCHOOL OF MEDICINE
and NAOMI SIMON,

                Defendants.

Civil Action No.: 25-cv-1639

**COMPLAINT**

*Jury Trial Demanded*

Plaintiff Nechama Kaiser ("Kaiser"), by and through her undersigned attorney, brings

this Complaint against Defendants NYU Grossman School of Medicine ("NYU") and Dr. Naomi

Simon ("Simon"), and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for religious discrimination in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, disability

discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), as

amended, 42 U.S.C. § 12101 *et seq.*, as well as violations of the New York State Human Rights

Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* and the New York City Human Rights Law

("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

## JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS

2.      The Court has original jurisdiction over Kaiser's federal claims pursuant to 28

U.S.C. §§ 1331, 1343.

3.      The Court has supplemental jurisdiction over Kaiser's state and city law claims

pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they

form part of the same case or controversy.

4.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §

1391 because a substantial part of the events or omissions giving rise to the claims occurred there.

5.    All conditions precedent to filing the instant action have been fulfilled. On or about May 21, 2024, Kaiser submitted a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On or about December 11, 2024, the EEOC issued Kaiser a Notice of Right to Sue, and this action is being brought within 90 days of Kaiser's receipt of the Notice of Right to Sue.

6.    Within 10 days of the commencement of this action, Kaiser will provide notice of this action to the New York City Commission on Human Rights and Corporation counsel, pursuant to New York City Administrative Code § 8-502(c).

## PARTIES

7.    Plaintiff Kaiser is a resident of the State of New York and former Research Data Associate of NYU.

8.    At all relevant times, Kaiser was an "employee" of Defendants under all relevant statutes.

9.    NYU Grossman School of Medicine is a division of New York University, a non-profit organization in New York.

10.    NYU employed at least 15 employees throughout Kaiser's employment.

11.    NYU conducted business at 1 Park Avenue, New York, NY 10016, where it employed Kaiser.

12.    Defendant Simon was at all relevant times employed by NYU as a professor of psychiatry and director of the Anxiety, Stress, and Prolonged Grief Program.

13.    Simon had the ability to affect the terms and conditions of Kaiser's employment

and did so by, among other things, assigning her work, overseeing her work, evaluating her performance and providing feedback, and terminating her employment.

14.     Upon information and belief, Simon resides in New York.

15.     At all relevant times, Defendants were Kaiser's "employer" under all relevant statutes.

## FACTUAL BACKGROUND

16.     Kaiser received a Bachelor of Arts in Psychology from Barnard College in 2019.

17.     She had nearly five years of psychology research experience before beginning her role at NYU.

18.     In or about October 2021, NYU offered Kaiser the position of Research Data Associate.

19.     Kaiser's role involved working on several research studies under Simon's supervision.

20.     Kaiser worked primarily at NYU's 1 Park Avenue, New York, NY 10016 location but, like other research associates, was generally permitted to work remotely on Fridays.

21.     Before beginning her employment, Kaiser disclosed her Jewish faith and was assured by NYU's Program Coordinator that her religious needs would be accommodated.

22.     Kaiser was explicitly told that Simon was aware of her religious needs and would not have an issue with Kaiser's schedule adjustments.

23.     Kaiser was told that she would be able to take off work for religious holidays, was unlikely to be required to go into the office on Friday as most employees work remotely that day, and could clock out early on Fridays when sunset was early, which she could make up for by working extra hours throughout the week.

24. In 2022, Kaiser requested time off work for Passover, which took place between April 15 and April 23.

25. Around that time, a new formal time-off request form was created shortly after Kaiser's Passover request—an action that appeared to single out Kaiser's religious observance.

26. Kaiser's supervisor, Simon, stated that taking time off for religious holidays would be "a problem," would not be fair to the other research associates, and that these associates did not appreciate Kaiser needing to take time off for the holidays.

27. Simon told Kaiser that when she was in medical school, she was required to choose either Rosh Hashana or Yom Kippur, but not both.

28. Although Kaiser explained why Passover lasts eight days and offered to provide Simon with related information and resources, Simon suggested that Kaiser was fabricating additional days of Passover to spend time with family.

29. When Kaiser next met with Simon, she asked why Kaiser needed more than one or two days off for Passover, then acknowledged that for "legal reasons" she should not be asking such questions and did not want Kaiser to feel compelled to "go to HR."

30. When Kaiser discussed the matter with colleagues, they uniformly denied having any issue with Kaiser's Passover observance.

31. In August 2022, Kaiser requested time off work for Rosh Hashana, Yom Kippur, and additional religious holidays. Simon never responded, and no approval or denial was issued.

32. Kaiser's colleagues advised her to observe the holidays regardless and assisted by covering her duties.

33. In November 2022, Kaiser received a positive annual performance review.

34. Shortly after receiving her positive November 2022 performance review, Kaiser

was singled out for failing to attend a non-mandatory Friday session at the ABCT conference. Although Kaiser had repeatedly informed Simon and colleagues of her Friday-Shabbat obligations, Simon treated her absence as a serious communication lapse and demanded that Kaiser send the entire team detailed schedules of her Friday religious observances.

35. In January 2023, Simon told Kaiser that time off in June 2023 for Kaiser's wedding would likely not be permitted and suggested Kaiser reschedule her wedding. A coworker who witnessed this conversation left in tears and later described the conversation as "toxic."

36. Later in January 2023, Simon reiterated that she did not want to approve Kaiser's June leave request and directed Kaiser to move the wedding two months before or after June.

37. Simon also began questioning Kaiser's weekly Friday schedule, despite the fact that all research associates generally worked remotely on Fridays.

38. Following this conversation, Simon informed Kaiser that working from home on Fridays would now "be an issue," despite nearly all research assistants on the team doing so and coming into the office approximately two days per week.

39. Simon provided no legitimate business rationale for why Kaiser suddenly had to be on-site on Fridays.

40. Simon again failed to respond to Kaiser's February 2023 requests for time off.

41. In late February 2023, Simon stated that June was not a suitable time for Kaiser's wedding and that she was unlikely to allow her time off, pressuring Kaiser to alter her religiously significant wedding date.

42. In March 2023, Simon scheduled a meeting with Kaiser, during which she expressed concerns about Kaiser's recent project work and reiterated that religious holiday

absences and Friday work-from-home arrangements were problematic.

43.    Simon instructed Kaiser to submit a religious accommodation form for the wedding.

44.    Simon also told Kaiser she might need to fill out a religious accommodation form for every religious holiday and early Friday departure going forward.

45.    Human Resources subsequently informed Kaiser that Simon had erred and no religious accommodation request was required for the wedding.

46.    Human Resources also stated that regular paid time off requests should suffice.

47.    At the end of March 2023, during a research associate meeting, Kaiser raised concerns about improper payment practices and altered work-time records. Simon admitted that "bending the rules" in terms of payment and clocking had occurred.

48.    In April 2023, Simon began requesting that Kaiser work on-site on Fridays. Although Kaiser explained the difficulty of commuting home before Shabbos, Simon called Kaiser's explanation "not consistent."

49.    Beginning in April 2023, Simon also insisted that Kaiser repeatedly cover weekend "MSN retreats," despite the availability of other research associates. Simon justified this by referencing Kaiser's upcoming religious holidays, implying that Kaiser's weekday absences needed to be "made up" even though Kaiser had more than enough vacation hours to cover these absences.

50.    When Kaiser asked why coverage could not be more evenly distributed, Simon dismissed the suggestion and pressured Kaiser to work extra Sunday hours.

51.    Kaiser took FMLA leave for an anxiety disorder from May 5, 2023, through July 24, 2023, which was later extended through August 29, 2023.

52.    Kaiser's anxiety disorder impacted, among other things, her ability to care for herself, eat, sleep, and work, as well as neurological functions.

53.    Before Kaiser began leave, Simon asked a series of intrusive questions about Kaiser's treatment, types of medical appointments, and doctor locations, warning that if the leave was used merely to get married, termination would result.

54.    Simon's comments suggested she believed Kaiser was fabricating a medical issue.

55.    Between May 5 and May 18, 2023, Simon repeatedly pressed Kaiser to produce an immediate physician's note confirming the necessity of her leave.

56.    Although Kaiser provided regular updates that she was awaiting her doctor's letter, Simon issued a formal written warning on May 18, 2023, even after Kaiser forwarded the note within minutes of receiving it from her physician.

57.    On July 24, 2023, at the close of Kaiser's initial FMLA leave, Kaiser met with employee and labor relations representative Scott Mellynchuk, reporting Simon's discriminatory conduct and requesting a departmental transfer. Mellynchuk stated that such a transfer was not possible but that he would initiate an investigation.

58.    On August 18, 2023, Mellynchuk informed Kaiser that he could not substantiate the discrimination complaints and provided no details regarding the scope of the investigation or who was interviewed.

59.    On August 21, 2023, Simon terminated Kaiser's employment, falsely alleging that Kaiser engaged in "self-employment" during leave in violation of NYU's policies and that "working while on leave is a serious infraction that results in automatic termination."

60.    Simon admitted she learned of Kaiser's alleged policy violation on August 14 but waited until after the HR investigation closed to terminate Kaiser.

61.    The specific instance cited by Simon, involving an email sent from Kaiser's NYU email account updating a collaborative research document, did not relate to self-employment or any outside work.

### FIRST CAUSE OF ACTION
**(Discrimination in Violation of Title VII and the ADA)**
*Against Defendant NYU*

62.    Kaiser repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

63.    By the actions described above, among others, Defendant discriminated against Kaiser by, inter alia, subjecting her to disparate treatment because of her membership in a protected class.

64.    Defendant violated Title VII and the ADA by subjecting Kaiser to this behavior based, in whole or in part, upon her membership in that protected class.

65.    As set forth in detail above and herein, NYU discriminated against Kaiser and subjected her to adverse employment actions including, but not limited to, terminating her employment.

66.    As a direct and proximate result of Defendant's unlawful employment practices, Kaiser has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

67.    Accordingly, Defendant discriminated against Kaiser because of her religion and disability, in violation of her rights under Title VII and the ADA.

68.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Kaiser, entitling her to punitive damages.

## SECOND CAUSE OF ACTION
### (Hostile Work Environment in Violation of Title VII and the ADA)
*Against Defendant NYU*

69.     Kaiser repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

70.     Defendant's actions and comments against Kaiser taken cumulatively subjected her to inferior terms, conditions or privileges of employment.

71.     NYU did not remedy the hostile work environment despite Kaiser's complaints.

72.     NYU thereby discriminated against Kaiser on the basis of her membership in a protected class by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment.

73.     As a direct and proximate result of the unlawful discriminatory conduct carried out by NYU, Kaiser has suffered, and continues to suffer, emotional distress for which she is entitled to an award of monetary damages and other relief.

74.     NYU's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Kaiser, entitling her to punitive damages.

## THIRD CAUSE OF ACTION
### (Retaliation in Violation of Title VII and the ADA)
*Against Defendant NYU*

75.     Kaiser repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

76.     As set forth in detail above, Kaiser engaged in activity protected under Title VII and the ADA.

77.     NYU was aware that Kaiser opposed unlawful conduct and/or asserted her rights under Title VII and the ADA.

78.     NYU, unlawfully and without cause, retaliated against Kaiser as a direct result of Kaiser asserting her rights under Title VII and the ADA, and Kaiser suffered materially adverse employment actions as a result.

79.     As a direct and proximate result of NYU's unlawful employment practices, Kaiser has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

80.     NYU's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Kaiser, entitling her to punitive damages.

81.     Accordingly, NYU retaliated against Kaiser in violation of her statutory rights as guaranteed by Title VII and the ADA.

**FOURTH CAUSE OF ACTION**
**(Failure to Accommodate in Violation of the ADA, NYSHRL, and NYCHRL)**
*Against both Defendants*

82.     Kaiser repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

83.     Kaiser is a disabled individual under the ADA and was perceived by Defendants as being disabled, and is therefore a member of a protected class.

84.     Defendants were aware and on notice of Kaiser's disability and its symptoms.

85.     Kaiser requested reasonable accommodations for her disability.

86.     Defendants failed to accommodate Kaiser's disability and refused to participate in any interactive discussion or process to determine if there was an accommodation that would accommodate Kaiser's disability.

87.     Had Defendants provided Kaiser with reasonable accommodation, Kaiser could have performed the essential functions of her job.

88.     Accordingly, Defendants discriminated against Kaiser by virtue of failing to accommodate her known disability and failing to engage in an interactive process in violation of the ADA.

89.     As a direct and proximate result of Defendants' unlawful employment practices, Kaiser has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

90.     Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Kaiser, entitling her to punitive damages.

**FIFTH CAUSE OF ACTION**
**(Discrimination in Violation of the NYSHRL)**
*Against All Defendants*

91.     Kaiser repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

92.     The aforementioned facts and circumstances demonstrate that Defendants discriminated against Kaiser because she was a member of a protected class.

93.     Kaiser is a member of a protected class under the NYSHRL and was perceived by Defendants as such.

94.      As set forth in detail above and here, Defendants discriminated against Kaiser and subjected her to adverse employment actions.

95.     As a direct and proximate result of the unlawful employment practices of Defendants, Kaiser has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

96.     Accordingly, Defendants discriminated against Kaiser because of her disability, in violation of her statutory rights as guaranteed by the NYSHRL.

## SIXTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of the NYSHRL)
*Against All Defendants*

97.    Kaiser repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

98.    Defendants' actions and comments against Kaiser taken cumulatively subjected her to inferior terms, conditions or privileges of employment.

99.    Defendants did not remedy the hostile work environment despite Kaiser's complaints.

100.    Defendants thereby discriminated against Kaiser on the basis of her membership in a protected class by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment.

101.    As a direct and proximate result of the unlawful discriminatory conduct carried out by Defendants, Kaiser has suffered, and continues to suffer, emotional distress for which she is entitled to an award of monetary damages and other relief.

102.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Kaiser, entitling her to punitive damages.

## SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
*Against All Defendants*

103.    Kaiser repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

104.    As set forth in detail above, Kaiser engaged in activity protected under the NYSHRL.

105.    Defendants retaliated by subjecting Kaiser to discrimination and adverse

employment actions because of her protected activity in violation of Kaiser's statutory rights.

106.    Defendants were aware that Kaiser opposed unlawful conduct and asserted her rights under the NYSHRL.

107.    Kaiser has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

108.    Accordingly, Defendants retaliated against Kaiser in violation of her statutory rights as guaranteed by the NYSHRL.

## EIGHTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
### *Against All Defendants*

109.    Kaiser repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

110.    The aforementioned facts and circumstances demonstrate that Defendants discriminated against Kaiser because she was a member of a protected class.

111.    Kaiser is a member of a protected class under the NYCHRL and was perceived by Defendants as such.

112.     As set forth in detail above and here, Defendants discriminated against Kaiser in the terms and conditions of her employment by treating Kaiser less well than her similarly situated, non-disabled coworkers.

113.    Defendants subjected Kaiser to adverse employment actions because of her disability.

114.    As a direct and proximate result of the unlawful employment practices of Defendants, Kaiser has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

115.    The conduct of Defendants has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Kaiser, entitling her to punitive damages.

116.    Accordingly, Defendants discriminated against Kaiser because of her disability, in violation of her statutory rights as guaranteed by the NYCHRL.

## NINTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of the NYCHRL)
*Against All Defendants*

117.    Kaiser repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

118.    Defendants' actions and comments against Kaiser taken cumulatively subjected her to inferior terms, conditions or privileges of employment.

119.    Defendants did not remedy the hostile work environment despite Kaiser's complaints.

120.    Defendants thereby discriminated against Kaiser on the basis of her membership in a protected class by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment.

121.    As a direct and proximate result of the unlawful discriminatory conduct carried out by Defendants, Kaiser has suffered, and continues to suffer, emotional distress for which she is entitled to an award of monetary damages and other relief.

122.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Kaiser, entitling her to punitive damages.

**TENTH CAUSE OF ACTION**
**(Retaliation in Violation of the NYCHRL)**
*Against All Defendants*

123.    Kaiser repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

124.    As set forth in detail above, Kaiser engaged in activity protected under the NYCHRL.

125.    Defendants retaliated against Kaiser by treating her less well than similarly situated employees and subjecting her to discrimination and adverse employment actions because of her protected activity in violation of the NYCHRL.

126.    Defendants were aware that Kaiser opposed unlawful conduct and/or asserted her rights under the NYCHRL.

127.    Defendants, unlawfully and without cause, retaliated against Kaiser as a direct result of Kaiser asserting her rights and opposing unlawful conduct under the NYCHRL, which involved conduct reasonably likely to deter an individual from engaging in such protected activity.

128.    As a direct and proximate result of Defendants' unlawful employment practices, Kaiser has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

129.    The conduct of Defendants has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Kaiser, entitling her to punitive damages.

130.    Accordingly, Defendants retaliated against Kaiser in violation of her statutory rights as guaranteed by the NYCHRL.

**ELEVENTH CAUSE OF ACTION**
**(Aiding and Abetting in Violation of the NYSHRL and NYCHRL)**
*Against Defendant Simon*

131.    Kaiser repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

132.    Defendant Simon aided, abetted, incited, compelled, or coerced NYU's unlawful conduct, including discrimination, failure to provide a reasonable accommodation, and retaliation, against Kaiser by their conduct, action, and inaction, in violation of the NYSHRL and NYCHRL.

133.    Simon was aware of her role as part of the unlawful activity and knowingly assisted NYU in its violations of the NYSHRL and NYCHRL.

134.    As a direct and proximate result of Simon's conduct, Kaiser has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

135.    Simon's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Kaiser, entitling her to punitive damages.

**RELIEF**

Plaintiff Nechama Kaiser demands judgment in her favor and against Defendants NYU Grossman School of Medicine and Dr. Naomi Simon as follows:

A.    An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Kaiser for all monetary and/or economic damages, including, but not limited to, past and future lost earnings;

B.    An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Kaiser for all non-monetary and/or

compensatory damages, including, but not limited to, compensation for her

emotional distress;

C.    An award of punitive damages, in an amount to be determined at trial;

D.    Prejudgment interest on all amounts due;

E.    An award of Kaiser's reasonable attorneys' fees and costs to the fullest extent

permitted by law; and

F.    Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Nechama Kaiser demands a trial by jury on all issues so triable of right.

Dated: February 26, 2025
New York, New York

**RISSMILLER PLLC**

By:    */s/ Alex Rissmiller*
Alex Rissmiller
5 Pennsylvania Plaza, 19th Floor
New York, NY 10001
T: (646) 664-1412
arissmiller@rissmiller.com

*Attorney for Plaintiff Nechama Kaiser*